In The United States District Court

For The Western District Of Wisconsin

---

Demetrius Cooper,

    Plaintiff,

v.                                                                                                                      Case No. 21-cv-757

Kaylene Betancourt, L.T Nerison

Ryan Blount,

    Defendants,

---

### Plaintiff's Motion To Leave and Amend His Complaint:

---

    Your Plaintiff Demetrius Cooper, herein, moves this Court pursuant to Fed.R.Civ.P. 15(a)(2). for an order allowing him to leave and amend his complaint to change the caption of the original complaint to the, now, appropriate defendants. This motion is appropriate considering the Court has asked Cooper to remove two separate lawsuits, which, the Court's stated were two. *See*: Dkt. 17

### Introduction:

    This is a civil action filed by Demetrius Cooper, a state prisoner, for damages under 42 U.S.C. § 1983, alleging excessive use of force, retaliation, deprivation of Petition clause, failure to intervene, and supervisory liability. Claims related to Cooper's Eighth and Fourth Amendment right to the United States Constitution.

### PARTIES:

1. Plaintiff, Demetrius Cooper is a prisoner at WSPF P.O. Box 1000 Boscobel, WI 53805. His mailing address is Demetrius Cooper # 462946 WSPF P.O. Box 1000 Boscobel, WI 53805.

2. At the times of Cooper complaint's related to Betancourt, Blount, and L.T Nerison Cooper was temporarily housed at Columbia Correctional Institution.

3. Cooper is now housed at WSPF P.O Box 1000 Boscobel, WI 53805

## DEFENDANTS:

4. Kaylene Betancourt is a defendant and at the time of the incident she was working as a Government employee. Her position was as a sergeant for unit 8/9 as Cooper was housed on Unit 9 at Columbia Correction Correctional Institution in Portage WI. It is believed that she is still employed at the same facility.

5. Ryan Blount is a defendant and at time of the incident he was working as a Government employee. His position was as a Security Director for Columbia Correctional Institution in Portage WI. It is believed that he is still employed at the same facility.

6. L.T Nerison is a defendant and at the time of the incident he was working as a Government employee. His position was a Lieutenant (supervisor) for the Columbia Correctional Institution in Portage WI. It is believed that he is still employed at the same facility.

### Jurisdiction:

The Court has jurisdiction over the plaintiff's claims of violation of Federal Constitutional rights under 42 U.S.C.§§1331 and 1343.

## STATEMENT OF CLAIM:

### Kaylene Betancourt Eighth Amendment Violation:

7. While Cooper was in segregation WSPF did not have a doctor, therefore, Cooper was temporarily transferred to Columbia Correctional Institution from WSPF because WSPF was unable to properly treat Cooper as Cooper was then on a hunger strike. As Cooper was housed in segregation, on 4/8/21 Cooper was escorted out of his cell where the Security Director Ryan Blount along with Lieutenant Olson wanted to meet with him.

8. At this meeting it was discussed that, the Warden wish to release Cooper from segregation while on his hunger strike and this would be an early release provided that Cooper agreed to no longer be tube fed and willingly walk to health service unit and drink boost and electrolytes without being forced fed.

9. Cooper agreed to the terms of no longer being tube fed and he'd walk to health service unit and no longer would be escorted or forced. The Security Director and Cooper agreed that his release would take place on Monday 4/12/21 and he'd be expected to walk to

health service unit following his release after 0615 prison count clears and began drinking his boost and electrolytes without being forced.

10. As agreed, Cooper was released on 4/12/21 and for that day Cooper began walking to health service unit where he began drinking his boost and electrolytes and no longer were being tube fed.

11. The following morning, on 4/13/21 Cooper was awakened at or around 0500hrs by several staff members (Supervisor L.T Nerison, Betancourt, "and two John Doe's none defendant's") aggressively and forcefully telling Cooper to come to the door and be restrained to be escorted to health services for tube feeding.

12. Cooper informed the staff members that, there was an agreement between him (Cooper), the Warden, Security, Director, and Lieutenant Olson that he would no longer be escorted to health service unit to be tube fed and that after 0615 count he would walk to health service unit to drink boost and electrolytes and not be force fed.

13. The staff members did not believe Cooper where this lead to an disagreement, whereas, Cooper may have called the staff members unbecoming names. Afterwards, Cooper did comply with there orders to be restrained and escorted to Health Service Unit to be tube fed.

14. Cooper then placed his hands through the trap door to be handcuffed in the front. Cooper was handcuffed and once his cell door came open, Cooper walked out facing down range. Cooper was instructed to place his hands outward so that a resistance belt could be placed on him.

15. As Cooper did so, one of the officers aggressively snatched Cooper left arm forward and began squeezing Cooper's inner arm (concealing the painful pressure hold) in an apparent effort to cause pain.

16. Cooper then jerked his arm forward to release the painful pressure hold asking why was he doing this. Immediately, the male staff members (two John Doe's who are none defendant's) forced Cooper into a wall subduing and restraining Cooper in a pressure hold (screaming stop resting) and restricting Cooper from having any movement as L.T Nerison began to vibrate and yell that he had a taser pressed to Cooper's back.

17. As Cooper was pinned against the wall and could not move the staff members continued to yell stop resisting, although, Cooper had never resisted anyone.

18. Betancourt then took Cooper's head and intentionally and forcefully banged it against the concrete wall or door nearly knocking Cooper unconscious. The only thing that kept Cooper to his feet was the fact that he was being held up and pinned against the wall.

19. Betancourt then released some of the pressure from Cooper's head, walking away only to then return for a second time, intentionally and forcefully banging Cooper's head and face against the concrete wall or door for, yet, a second time even harder.

20. Cooper was not resisting or being combative. There was no need for Cooper to be forcefully pinned to the wall. There was no need for Betancourt to forcefully bang Cooper's head and face against the concrete or wall the first time. There was certainly no need for Betancourt to return then slam Cooper's head and face against the wall or door a second time. This caused Cooper severe pain, swollen face, black eye, and chipped tooth. Cooper's jaw has continued to pop and not appear to have set properly.

21. Cooper was then forcefully taken out and placed in a restraint chair then wheeled to health service unit to be tube fed. After Cooper was fed Cooper was evaluated by the nursing staff and provided ice to reduce the swelling for his injury. Cooper was then placed in Ds1.

22. Cooper was seen several times for the pain and swelling in his head and face area. As a result of Cooper's face being slammed against the wall, Cooper did suffer a black eye and chipped tooth. Since, Cooper's jaw has continued to pop as it appears his jaw is not set right.

23. Cooper is now suing Betancourt in the amount of $25,000.00 for (banging his head and face against the wall twice) in violation of his Eighth Amendment right as Betancourt's actions were maliciously and sadistically to cause harm and in no way the force was applied in a good faith effort to maintain or restore discipline.

### Kaylene Betancourt First Amendment Violation:

24. The same day Cooper was seen by L.T. Olson whereas, he then recognized Cooper was not suppose to be accompanied at cell door at 0500hrs as Cooper explained to the defendant's. Cooper was not suppose to be placed in segregation, therefore Cooper was released back to his cell.

25. The following day on 4/14/21 Kaylene Betancourt was worked as the Sergeant of Cooper's housing unit nine. At medication pass Cooper approached Kaylene Betancourt and explained to her that her actions were unnecessary and there was no need for her to cause Cooper severe harm and because of her actions; he'll be filing an inmate complaint.

26. Kaylene Betancourt responded stating, "if you think you're going to be filing a lawsuit or complaint, than I'll be filing a conduct report to put an end to that." Kaylene Betancourt then filed a false conduct report No. 160790.

27. Cooper was sanctioned 16 days cell confinement for Kaylene Betancourt's conduct report. Cooper then appealed the conduct report to which the Warden later dismissed.

28. In June of 2021 Cooper was housed in segregation (Ds2) when Kaylene Betancourt was escorting another inmate to segregation to a cell directly across from Cooper. Before placing the inmate into the cell Betacourt went into the cell to search it to double check

for contraband. Cooper then spoke to Betacourt and asked if she'll talk to him once she was done with the other inmate. Betancourt agreed.

29. Once Betancourt completed her duties with the other inmate she arrived at Cooper's cell and her first words were, "what the fuck do you want, do you want your ass beat again?" Cooper asked if she'd apologize to him for banging his head and face against the wall on 4/13/21. Betancourt responded, "you shouldn't have been mouthing off to me and my staff and you're lucky all I did was smash your head and face against the wall, the next time I'll break your fucking neck. Betancourt walked away and her last words were, try me, I fucking dare you."

30. Cooper believe Betancourt could accomplish her goal and actually break his neck as she is an aggressive woman that appears to be six foot four inches tall and weighs nearly 400 pounds of solid steel.

31. Cooper is now suing Kaylene Betancourt in the amount of $25,000.00 for violation his First Amendment right as her actions to file a conduct report were in retribution for Cooper filing an inmate complaint and to deter him from exercising his First Amendment right.

## Ryan Blount First Amendment Violation:

32. Cooper is now suing Ryan Blount who is the Security Director at Columbia Correctional Institutions. Blount is Betancourt's supervisor and one of many of his job duties are to investigate inmate excessive force complaints so that inmates may use the (ICE) grievance process to exercise there First Amendment right.

33. In this instance, Cooper contacted Blount to notify him that he ( Mr.Cooper) was subject to unreasonable use of force by Betancourt as she banged his head and face against the wall twice when Cooper was not being combative or resistant.

34. Blount responded lying that he was/would be investigating the incident but Cooper would not know the outcome of said investigation.

35. Cooper later received a report from the complaint department showing that Blount had made a decision prior to receiving Cooper's complaint that, the force used was reasonable and that there was no investigation being done.

36. I.e Blount had lied claiming to be conducting an investigation but the reports show there was no investigation as he already made his decision related to her conduct.

37. Blount's lie violated Cooper's first Amendment right because it impeded Cooper's ability to grieve through the complaint process as the complaint department will not laterally and duly investigate if there's already an investigation being conducted.

38. Cooper then contacted the Warden Larry Fuchs; to which he (Fuchs) forced Blount to conduct an investigation related to Betancourt's actions and Cooper's complaints.

39. Blount's lies impeded Cooper's ability to properly grieve and get adequate remedy through the complaint process.

40. Cooper is now suing Blount in the amount of $25,000.00 for lying and intentionally interfering is his grievance process which violated his first Amendment right to properly grieve and get an adequate remedy.

### L.T Nerison Failure To Intervene:

41. Cooper is now suing L.T. Nerison for failing to intervene and stopping Betancourt from banging his (Cooper's) head and face against the wall/door twice. While the other two John Doe officers pinned and subdued Cooper to the wall, they had no clear realistic opportunity to stop or intervene Betancourt from banging Cooper's head.

42. However, L.T. Nerison did have the opportunity to stop and intervene Betancourt's actions but his failure to act allowed her to continue a second time to bang Cooper's head and face causing a painful severe injury. However, L.T. Nerison was not interested in stopping Betancourt from causing harm to Cooper as his only interest was threatening to use a taser on Cooper while not being combative or resistant.

43. Cooper is now suing L.T. Nerison in the amount of 25,000.00 for his failure to intervene in Betancourts actions.

### L.T Nerison Supervisory Liability:

44. Cooper is also suing L.T. Nerison in the amount of 25,000.00 as he was the supervisor present on 4/13/21 during Betancourt's use of force and he did know about her conduct and facilitated it, approve it, condone it, and turned a blind eye allowing her to continue.

### Exhaustion Of Legal Remedies:

Plaintiff Demetrius Cooper used the prison grievance procedure available to solve the problems but Cooper was ultimately denied. Cooper did appeal and fully exhausted his available remedies.

### Rule 8 Fed. R. Civ P.

The Courts has indicated in Dkt. 17 it is undetermined if Cooper has provided fair notice. Fed. R. Civ. P. 8(a)(2). Short and plain statement required under pleading requirements must give the defendant fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2). Cooper has provided fair notice. Cooper has complied. *see:*
¶¶¶¶¶¶¶¶¶¶¶¶¶¶18,19,20,23,25,26,28,29,31,34,35,36,37,39,40,42,43

**Prayer For Relief:**

WHEREFORE, Plaintiff respectfully prays that this Court enters a judgment granting plaintiff: (a.) Declaration that the acts and omissions described herein violated plaintiffs rights under the Constitution and laws of the United States; (b.) Compensatory damages; (c.)trial by jury; (d.) Cooper also seeks mental and emotional relief of 25,000 from Betancourt as he can show physical harm and injury, (d.) trial with Magistrate as Judge (e) and any relief this Court deems just, proper and equitable. Cooper has read the foregoing complaint and based on information and belief he believes it to be true and accurate. Cooper certify under penalty of perjury that the forgoing is true and correct.

Demetrius Cooper # 462946

WSPF

P.O.Box 1000

Boscobel, WI 53805

*/s/ Demetrius Cooper*

1-5-22